IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | | |
|---|---|---|
| ANTHONY HAMMOND MURPHY, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED; | ) ) ) ) | 1:21-CV-00204-RAL |
| Plaintiff, | ) ) ) ) | RICHARD A. LANZILLO UNITED STATES MAGISTRATE JUDGE |
| vs. | ) ) ) | ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT |
| THE HUNDREDS IS HUGE, INC, | ) ) ) | |
| Defendant, | ) ) | IN RE: ECF NO. 34 |

Now pending before the Court is Plaintiff's Unopposed Motion to Certify Class for Settlement Purposes and for Final Approval of Class Settlement Agreement.  ECF No. 34.  On June 10, 2022, the Court preliminarily certified the following Settlement Class:

> [A] national class including all Blind or Visually Disabled individuals who use screen reader auxiliary aids to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who may access, attempt to access, or be deterred from attempting to access, The Hundreds is Huge, Inc.'s Digital Properties including its Website at http://www.thehundreds.com and/or Mobile App from the United States.

ECF No. 25 at ¶ 3.  The Court granted preliminary approval to the proposed class action settlement set forth in the Agreement.  *Id.*

The Court held a final fairness hearing on November 16, 2022 to consider: (1) whether the terms and conditions of the Agreement are fair, reasonable, and adequate; (2) whether the

1

Parties' Agreement should be given final approval; and (3) whether and in what amount to award

attorneys' fees to Class Counsel and whether and in what amount to award an incentive award to

Plaintiff. Having carefully considered the motion, the relevant legal authority, and the proposed

Agreement and all supporting documents, the Court GRANTS FINAL APPROVAL of the

Agreement as set forth below.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT

1.      The Court has personal jurisdiction over the Parties, venue is proper, and the

Court has subject matter jurisdiction to approve the Agreement, including all exhibits thereto, to

enter this Final Approval Order.

2.      The Agreement was negotiated at arm's length by experienced counsel who were

fully informed of the facts and circumstances of this litigation (the "Lawsuit") and of the

strengths and weaknesses of their respective positions. The Agreement was reached after the

Parties engaged in extensive settlement discussions. Counsel for the Parties were therefore well-

positioned to evaluate the benefits of the Agreement, taking into account the expense, risk, and

uncertainty of protracted litigation.

3.      The Court finds that the distribution of the Class notice, as provided for in the

Agreement, (i) constituted the best practicable notice under the circumstances to Settlement

Class Members, (ii) constituted notice that was reasonably calculated, under the circumstances,

to apprise Settlement Class Members of, among other things, the pendency of the Lawsuit, the

nature and terms of the proposed settlement, their right to object to the proposed settlement, and

their right to appear at the Fairness Hearing, (iii) was reasonable and constituted due, adequate,

and sufficient notice to all persons entitled to be provided with notice, and (iv) complied fully

with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law.

4.     The Agreement is finally approved in all respects as fair, reasonable, and adequate pursuant to Fed. R. Civ. P. 23(e). The terms and provisions of the Agreement have been entered into in good faith and are hereby fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties.

5.     The Parties are hereby directed to implement the Agreement according to its terms and provisions.

6.     The proposed Settlement Class is certified pursuant to Fed. R. Civ. P. 23(a) and (b)(2) for purposes of settlement. The Settlement Class is defined as:

[A] national class including all Blind or Visually Disabled individuals who use screen reader auxiliary aids to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who may access, attempt to access, or be deterred from attempting to access, The Hundreds is Huge, Inc.'s Digital Properties including its Website at http://www.thehundreds.com and/or Mobile App from the United States.

7.     The Court appoints and designates Plaintiff Anthony Hammond Murphy and as representative of the Settlement Class.

8.     The Court finds Kevin Tucker, Kevin Abramowicz, Chandler Steiger, and Stephanie Moore of East End Trial Group LLC and Lawrence H. Fisher are experienced and competent class action counsel who fairly and adequately protected the interests of the putative class throughout this litigation and appoints them as Class Counsel for the Settlement Class.

9.      Upon entry of this Final Approval Order, the Injunctive Releasing Parties shall, by operation of this Order Granting Final Approval of Class Action Settlement, fully and finally release, acquit, and discharge Defendant from the Released Injunctive Claims as set forth in the Agreement.

10.     Pursuant to this release, Plaintiff and the Settlement Class Members shall not bring any claims concerning the Accessibility of the Digital Properties during the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term. Notwithstanding this release, Plaintiff and the Settlement Class Members may fully utilize the Dispute Resolution Procedure during the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term.

11.     Plaintiff and all Settlement Class Members are, from this day forward, hereby enjoined from asserting any Released Injunctive Claims through the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term, to enforce this Agreement.

12.     The Parties shall move to dismiss the Lawsuit with prejudice pursuant to Rule 41 of the Federal Rules of Civil Procedure no later than forty-five (45) days following the date of Final Approval and Defendant's payment of fees pursuant to the Agreement, whichever occurs later.  Pursuant to *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994), the Parties' joint motion shall request that the Court's dismissal order expressly retain the Court's jurisdiction to enforce this Agreement against all Parties.

Entered and Ordered this *17th* day of *November*, 2022.

BY THE COURT:

RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE

**EXHIBIT A**

**CLASS ACTION SETTLEMENT AGREEMENT**

Table of Contents

1.   Introduction .................................................................................................. 1

2.   Definitions ................................................................................................... 2

3.   Conditions Precedent ................................................................................... 6

4.   The Monegro Consent Decree ..................................................................... 6

5.   The Hundreds Shall Make the Digital Properties Accessible ...................... 6

6.   Third-Party Content ..................................................................................... 7

7.   Accessibility Coordination Team ................................................................ 7

8.   Accessibility Consultant and Status Report ................................................ 7

9.   Initial Accessibility Audit ........................................................................... 8

10.  Accessibility Strategy ................................................................................. 8

11.  Accessibility Statement ............................................................................... 9

12.  Accessibility Training ................................................................................. 9

13.  Customer Service Training ........................................................................ 10

14.  Modified Bug Fix Priority ........................................................................ 10

15. Accessibility Support ............................................................................... 10

16. Semi-Annual Automated Accessibility Audit ................................................ 11

17. Annual End-User Accessibility Testing ...................................................... 11

18. Agreement Term ...................................................................................... 11

19. Monitoring of Compliance ........................................................................ 12

20. The Hundreds' Reporting Schedule ........................................................... 12

21. Scope of Agreement ................................................................................ 14

22. Incentive Award to Named Plaintiff .......................................................... 14

23. Annual Report and Meet-and-Confers ....................................................... 14

24. Dispute Resolution Procedure .................................................................. 15

25. Attorneys' Fees and Costs Through the Agreement Term ............................. 16

26. Attorneys' Fees and Costs After the Agreement Term .................................. 17

27. Preliminary Approval, Objections, and Fairness Hearing ............................. 18

28. Notice .................................................................................................. 19

29. Judgment, Final Approval, and Dismissal .................................................. 20

30. No Admission of Liability ......................................................................... 20

31. Terms Not Confidential; Non-Disparagement .............................................. 20

32. Release ................................................................................................. 21

33. Entire Agreement ................................................................................... 21

34. Amendment ........................................................................................... 21

35. Severability ........................................................................................... 21

36. Drafting of this Agreement ...................................................................... 21

37. Execution in Counterparts ....................................................................... 21

38.   Continuing Jurisdiction ................................................................................ 22

39.   Deadlines .................................................................................................... 22

40.   Communications to Named Plaintiff, Class Counsel, the Settlement Class,
      and The Hundreds ...................................................................................... 22

### Settlement Agreement

1.   **Introduction.** This Agreement (all capitalized terms shall have the meanings set forth in Section 2) is entered into by and between Defendant The Hundreds is Huge, Inc. ("The Hundreds") and Named Plaintiff Anthony Hammond Murphy ("Murphy") individually and on behalf of the Settlement Class.

   1.1.   The Hundreds operates and controls the Website, which is open to consumers in the United States through the internet and the Mobile App, which is available for download from the Apple App Store and Google Play.

   1.2.   This Agreement applies to the Website, the Mobile App, New Websites and Mobile Apps, and Subsequently Acquired Websites and Mobile Apps, but not Subsequently Abandoned Websites and Mobile Apps.

   1.3.   Murphy uses screen reader auxiliary aids to access digital information and is a person with a disability as that term is used in the ADA. Murphy has attempted to patronize the Website and Mobile App and intends to do so again in the future.

   1.4.   On or about July 28, 2021, Murphy filed this Lawsuit in the United States District Court for the Western District of Pennsylvania at *Anthony Hammond Murphy v. The Hundreds is Huge, Inc.,* Civil Action No. 1:21-cv-204 (the "Lawsuit"), alleging the Website and Mobile App are not Accessible to Blind or Visually Disabled individuals, in violation of the ADA.

   1.5.   On or about October 25, 2021, Murphy filed a Request to Enter Default against the Hundreds in the Lawsuit which was entered by the Clerk of Court that same day (the "Default").

   1.6.   One or about February 23, 2022, Murphy moved the Court to set aside the Default which was granted by the Court the same day.

   1.7.   On or about March 3, 2022 Murphy filed a Motion for Leave to File Amended Class Action Complaint  seeking to assert class action claims (the "Amended Class Action Complaint") which was granted by the Court the same day.

1.8.    Murphy filed his Amended Class Action Complaint on or about March 4, 2022.

1.9.    The Hundreds has denied and does deny each and every claim and allegation made by Murphy in the Lawsuit and set forth in the Amended Class Action Complaint but the Parties nevertheless wish to effect a complete resolution and settlement of all claims, disputes, and controversies relating to the allegations of Murphy and the Settlement Class and to resolve their differences and disputes by settling this Lawsuit.

1.10.   This Agreement is binding on The Hundreds' subsidiaries, successors, and assigns. This Agreement is binding on Murphy's agents, successors, representatives, spouse, heirs, executors, legal representatives and assigns.

## 2.    Definitions.

2.1.    **"Accessibility Consultant"** means the person or company designated by The Hundreds to serve the purposes of Section 8 of this Agreement.

2.2.    **"Accessibility Coordination Team"** means the team designated by The Hundreds to serve the purposes of Section 7 of this Agreement.

2.3.    **"Accessibility Statement"** means the statement required by Section 11 of this Agreement that must demonstrate The Hundreds' commitment to implementing Accessible services to Blind or Visually Disabled individuals.

2.4.    **"Accessibility Strategy"** means the corrective action strategy required by Section 10 of this Agreement.

2.5.    **"Accessibility Support Personnel"** means the individuals providing the support required by Section 15 of this Agreement.

2.6.    **"Accessible"** or **"Accessibility"** refers to digital content that provides effective communication to all users, generally, in accordance with the success criteria of the WCAG 2.1.

2.7.    **"ADA"** means Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.*, and its implementing regulations.

2.8.    **"Agreement"** means this settlement agreement.

2.9.    **"Agreement Term"** means the time from the Effective Date through the end of three (3) years from the Effective Date.

2.10.   **"Annual End-User Accessibility Testing"** means the annual testing required by Section 17 of this Agreement.

2.11.   **"Annual Report"** means the document The Hundreds shall submit to Class Counsel on the Effective Date's anniversary date during the Agreement Term pursuant to Section 23 of this Agreement, stating the status of this Agreement's implementation and identifying any outstanding issues on which the Parties are in disagreement.

2.12.   **"Blind or Visually Disabled"** means, with respect to an individual, a physical impairment that substantially limits the major life activity of seeing, pursuant to the ADA, 42 U.S.C. § 12102(1)-(2).

2.13.   **"Class Counsel"** means Kevin W. Tucker and Kevin Abramowicz of East End Trial Group LLC and Lawrence H. Fisher of LAWFIRST.

2.14.   **"Costs"** means all out-of-pocket expenses reasonably incurred, and shall include (but not be limited to) amounts payable to experts.

2.15.   **"Court"** means the United States District Court for the Western District of Pennsylvania.

2.16.   **"Digital Properties"** means the Website, the Mobile App, any New Websites and Mobile Apps, and any Subsequently Acquired Websites and Mobile Apps.

2.17.   **"Dispute Resolution Procedure"** means the process described in Section 23 of this Agreement.

2.18.   **"Effective Date"** means the date on which all conditions precedent set forth in Section 3 of this Agreement are completed.

2.19.   **"Final Approval"** means the period thirty-one (31) days following approval of this Agreement given in a written order by a United States District Court Judge or Magistrate of competent jurisdiction after notice to the Settlement Class and hearing, provided no appeal is filed during this period. If an appeal is filed, then Final Approval shall mean the period thirty-one (31) days following the exhaustion of any and all appeal(s).

2.20.   **"First Extended Agreement Term"** means the time from the end of the Agreement Term through the end of four (4) years from the Effective Date.

2.21.   **"Initial Accessibility Audit"** means the initial audit required by Section 9 of this Agreement.

2.22.   **"Injunctive Releasing Parties"** means Murphy and the Settlement Class Members, and each of their executors, successors, spouses, family members, heirs, assigns, administrators, agents, and representatives.

2.23.   **"Lawsuit"** means *Anthony Hammond Murphy v. The Hundreds is Huge, Inc.,* Civil Action No. 1:21-cv-204 filed in the United States District Court for the Western District of Pennsylvania.

2.24.   **"Letter of Accessibility"** means the letter issued by the Accessibility Consultant that confirms the Digital Properties are Accessible, explains the testing standards, and summarizes both the remediation efforts The Hundreds has taken during the Agreement Term (and, if applicable, the First Extended Agreement Term and the Second Extended Agreement Term) and the policies and practices The Hundreds has adopted to maintain the Digital Properties in an Accessible manner going forward.

2.25.   **"Long-Form Notice"** means the long-form class notice attached to the Agreement as Agreement Exhibit 1.

2.26.   **"Mobile App"** means the application that The Hundreds makes available for download on the App Store and Google Play.

2.27.   **"Modified Bug Fix Priority"** means the policies required by Section 14 of this Agreement.

2.28.   **"Named Plaintiff"** means Anthony Hammond Murphy.

2.29.   **"New Websites and Mobile Apps"** means any website or mobile application that The Hundreds develops, starts to operate, and makes publicly available to consumers in the United States after the Effective Date of this Agreement.

2.30.   **"Notice Deadline"** means the deadline for publishing notice to be set by the Court as part of the Preliminary Approval process.

2.31.   **"The Hundreds Personnel"** means all persons who are employed by The Hundreds and who have managerial responsibility for the design and development of the Website, the Mobile App, New Websites and Mobile Apps, or Subsequently Acquired Websites and Mobile Apps.

2.32.   **"The Hundreds Settlement Contact"** means a The Hundreds employee designated as the initial point of contact for Class Counsel with respect to issues concerning this Agreement. The Hundreds shall notify Class Counsel in writing of the employee designated as The Hundreds Settlement Contact within ten (10)

days of the Effective Date. The Hundreds shall also notify Class Counsel in writing should a new employee be designated as the The Hundreds Settlement Contact during the Agreement Term. Such notice shall be required within ten (10) days of designation of the new The Hundreds Settlement Contact.

2.33.    **"Parties"** refers to The Hundreds, Murphy and the Settlement Class.

2.34.    **"Preliminary Approval"** means the initial approval by the Court of the terms of this Agreement, which will occur before any notice being provided in accordance with this Agreement.

2.35.    **"Released Injunctive Claims"** means any and all claims, rights, demands, charges, complaints, actions, suits, and causes of action, whether known or unknown, suspected or unsuspected, accrued or unaccrued, for injunctive, declaratory, or non-monetary relief, based on the Accessibility of the Digital Properties to persons who are limited in the life activity of seeing and who use screen reader auxiliary aids to access digital information, including any injunctive, declaratory, or non-monetary claims under: (i) the ADA; and (ii) any state or local statutory, administrative, regulatory, or code provisions that either (a) directly incorporate the ADA or (b) set forth standards or obligations coterminous with or equivalent to the ADA. The Released Injunctive Claims cover all conduct concerning the Accessibility of the Digital Properties through the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term.

2.36.    **"Second Extended Agreement Term"** means the time from the end of the First Extended Agreement Term through the end of five (5) years from the Effective Date.

2.37.    **"Semi-Annual Automated Accessibility Audit"** means the semi-annual audit required by Section 16 of this Agreement.

2.38.    **"Settlement Class"** or **"Settlement Class Members"** means a national class including all Blind or Visually Disabled individuals who use screen reader auxiliary aids to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who may access, attempt to access, or be deterred from attempting to access, The Hundreds is Huge, Inc.'s Digital Properties including its Website at http://www.thehundreds.com and/or Mobile App from the United States.

2.39.   **"Settlement Website"** means a search-engine-optimized website operated by a stipulated class action settlement administrator and located at https://www.thehundredsADAsettlement.com.

2.40.   **"Status Report"** means a written evaluation that (a) identifies content, features, and services on the Digital Properties that are not Accessible to individuals who use screen reader auxiliary aids, and (b) recommends steps The Hundreds must take to ensure their remediation.

2.41.   **"Subsequently Abandoned Websites and Mobile Apps"** means any website or mobile application, including the Digital Properties, that the Hundreds ceases to operate or make publicly available to consumers in the United States after the Effective Date of this Agreement.

2.42.   **"Subsequently Acquired Websites and Mobile Apps"** means any website or mobile application that the Hundreds acquires from a third party, starts to operate, and makes publicly available to consumers in the United States after the Effective Date of this Agreement.

2.43.   **"Third-Party Content"** means content that is not developed or completely owned by The Hundreds.

2.44.   **"WCAG 2.1"** means the Web Content Accessibility Guidelines 2.1, including the WAI-ARIA.

2.45.   **"Website"** means the digital property located at https://www.thehundreds.com/.

3.   **Conditions Precedent.** This Agreement shall be conditioned and effective only upon the occurrence of all of the following events.

3.1.   The Court grants Preliminary Approval of this Agreement and orders certification of the Settlement Class and notice to the Settlement Class Members.

3.2.   Notice is provided to the Settlement Class Members in accordance with Section 27 of this Agreement.

3.3.   The Court grants Final Approval of this Agreement and enters judgment in accordance with the terms herein after a fairness hearing has been conducted and all such orders and approvals have become final and non-appealable.

4.   **The Monegro Consent Decree.** The Hundreds shall continue to abide by the terms of the Consent Decree (the "Monegro Consent Decree") entered in a related matter filed in the United States District Court for the Southern District of New York at Case No. 1:21-cv-

01331-AT (Monegro Consent Decree publicly filed at ECF No. 19). The Hundreds will continue to comply with the Monegro Consent Decree consistent with the terms and conditions set forth therein and in this Agreement. If any provision contained in this Agreement conflicts with any provision of the Monegro Consent Decree, the provision in this Agreement shall govern and control in a manner permitting The Hundreds to remain in compliance with the Monegro Consent Decree.

5. **The Hundreds Shall Make the Digital Properties Accessible.** The Hundreds shall ensure Blind or Visually Disabled individuals have full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations the Hundreds provides by and through the Digital Properties as provided for in this Section.

   5.1. The Hundreds shall ensure the U.S. portions of the Website and Mobile App are Accessible by the end of the Agreement Term.

   5.2. The Hundreds shall ensure the U.S. portions of any New Websites and Mobile Apps are Accessible at the time of their release.

   5.3. The Hundreds shall ensure the U.S. portions of any Subsequently Acquired Websites and Mobile Apps are Accessible within eighteen (18) months of their acquisition.

6. **Third-Party Content.**

   6.1. Subject to Section 6.2 and 6.3 below, The Hundreds shall not be required to ensure websites and advertisements provided by third parties not fully owned, controlled, or operated by The Hundreds are Accessible.

   6.2. After the Effective Date of this Agreement, for each new, renewed, or renegotiated contract with a vendor of Third-Party Content, The Hundreds shall request that the vendor provide Accessible content. If, during this contracting process, The Hundreds issues a request for a proposal for development or inclusion of Third-Party Content on the Digital Properties, then The Hundreds shall include Accessibility as a criterion. For Third-Party Content that is not subject to a written contract, The Hundreds shall seek out such content that ensures Accessibility.

   6.3. If, after following the process set forth in this Section, The Hundreds is unable to confirm Accessible Third-Party Content, it shall advise Class Counsel annually, consistent with Section 23.

7. **Accessibility Coordination Team.**

7.1.   Within three (3) months of the Effective Date of this Agreement, The Hundreds shall designate a team of its employees as the Accessibility Coordination Team for the Digital Properties. The Hundreds shall also notify Class Counsel in writing when such designation is complete.

7.2.   The Accessibility Coordination Team shall be responsible for coordinating The Hundreds' compliance with Sections 5 through 17 of this Agreement.

7.3.   The Hundreds shall maintain the Accessibility Coordination Team through at least the Agreement Term.

8.   **Accessibility Consultant and Status Report.**

8.1.   Within six (6) months of the Effective Date of this Agreement, The Hundreds shall appoint or retain an Accessibility Consultant who is knowledgeable about digital accessibility, the ADA, and Accessibility. The Hundreds shall inform Class Counsel of its selection of an Accessibility Consultant. If Class Counsel or Murphy objects to The Hundreds' selection, the Parties will work in good faith to resolve such objection pursuant to the Dispute Resolution Procedure.

8.2.   The Accessibility Consultant's duties shall include: (a) assisting The Hundreds with conducting the Initial Accessibility Audit; (b) advising The Hundreds as to how to make the Digital Properties Accessible; (c) verifying that the Digital Properties are Accessible in the Letter of Accessibility; and (d) verifying The Hundreds' compliance with Sections 5.1, 5.2 and 5.3 of this Agreement.

8.3.   Before each anniversary date of the Effective Date of this Agreement, the Accessibility Consultant shall provide The Hundreds with a Status Report. In the Status Report, the Accessibility Consultant shall: (a) identify content, features, and services on the Digital Properties that are not Accessible to individuals who use screen reader auxiliary aids; and (b) recommend steps The Hundreds must take to ensure the Accessibility of the Digital Properties.

8.4.   The Hundreds shall include copies of the Letter of Accessibility and the Status Report as exhibits to the Annual Report provided to Class Counsel on the anniversary of the Effective Date during the Agreement Term.

8.5.   The Hundreds shall notify Class Counsel if it appoints or retains a new Accessibility Consultant during the Agreement Term within one (1) month of any change.

9.   **Initial Accessibility Audit.**

9.1.   Within nine (9) months of the Effective Date of this Agreement, The Hundreds shall complete the Initial Accessibility Audit of the Website and Mobile App.

9.2.   The Initial Accessibility Audit shall be conducted in a professional manner and shall be benchmarked by appropriate processes, including automated and end-user testing, consistent with the Accessibility Consultant's recommendations.

9.3.   The Hundreds shall include the results of the Initial Accessibility Audit as an exhibit to the Annual Report due to Class Counsel on the Effective Date's first anniversary.

**10.   Accessibility Strategy.**

10.1.   Within eighteen (18) months of the Effective Date of this Agreement, The Hundreds shall develop and implement an Accessibility Strategy designed to ensure that the Digital Properties are Accessible.

10.2.   In developing and implementing the Accessibility Strategy, The Hundreds shall consider this Agreement, the Initial Accessibility Audit, the Accessibility Statement, and the recommendations and Status Reports of the Accessibility Consultant.

10.3.   Within eighteen (18) months of the Effective Date of this Agreement, The Hundreds shall provide a copy of the Accessibility Strategy to Class Counsel.

10.4.   Within eighteen (18) months of the Effective Date of this Agreement, The Hundreds shall disseminate the Accessibility Strategy among The Hundreds Personnel.

**11.   Accessibility Statement.**

11.1.   Within nine (9) months of the Effective Date of this Agreement, The Hundreds shall develop the Accessibility Statement.

11.2.   The Accessibility Statement shall, at minimum: (a) state that The Hundreds is making efforts to maintain and increase access to the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Digital Properties; (b) solicit feedback from visitors to the Digital Properties as to how the accessibility of the Digital Properties can be improved; and (c) include Accessible methods of submitting Accessibility related questions, comments, and complaints, including a toll-free telephone number and an email address.

11.3.   Within nine (9) months of the Effective Date of this Agreement, The Hundreds shall provide a copy of the Accessibility Statement to Class Counsel.

11.4.   Within twelve (12) months of the Effective Date of this Agreement, The Hundreds shall post the Accessibility Statement on the Website.

11.5.   Within eighteen (18) months of the Effective Date of this Agreement, The Hundreds shall add an invisible link at the beginning of the Website, directing consumers using screen readers to the Accessibility Statement.

11.6.   At the time of their release, The Hundreds shall add an invisible link at the beginning of any New Websites and Mobile Apps, directing consumers using screen readers to the Accessibility Statement located in the footer of the Website.

11.7.   Within six (6) months of their acquisition, The Hundreds shall add an invisible link at the beginning of any Subsequently Acquired Websites and Mobiles Apps, directing consumers using screen readers to the Accessibility Statement.

11.8.   The Annual Report shall state the status of the implementation of Section 11.

**12.     Accessibility Training.**

12.1.   The Hundreds shall train all employees responsible for website or mobile application design, development, or maintenance to ensure the future design, development, and maintenance of the Digital Properties are and remain Accessible within eighteen (18) months of the Effective Date of this Agreement.

12.2.   To the extent The Hundreds has already provided Accessibility training to all current employees responsible for website or mobile application design, development, or maintenance, The Hundreds shall provide refresher Accessibility training to those employees within eighteen (18) months of the Effective Date of this Agreement.

12.3.   The Hundreds shall provide Accessibility training to all newly-hired employees responsible for website or mobile application design, development, or maintenance within 180 days of their hire date.

12.4.   The Hundreds shall provide refresher Accessibility training to all current employees responsible for website or mobile application design, development, or maintenance on an annual basis commencing in 2023.

16

12.5.   During the Agreement Term and consistent with the annual reporting requirements in Section 23 of this Agreement, The Hundreds shall provide copies of all Accessibility training materials to Class Counsel.

**13.** **Customer Service Training.** The Hundreds shall ensure its Accessibility Support Personnel are trained to assist individuals who are Blind or Visually Disabled who encounter difficulties using the Digital Properties with screen reader auxiliary aids, and to timely assist such individuals within published hours of operation.

**14.** **Modified Bug Fix Priority.**

14.1.   Within eighteen (18) months of the Effective Date of this Agreement, The Hundreds shall make reasonable efforts to modify its existing bug fix policies, practices, and procedures to include the elimination of bugs that create Accessibility barriers, including those that prohibit effective communication or impair the Accessibility of the Digital Properties.

14.2.   The Hundreds shall ensure that any bugs that create Accessibility barriers to the Digital Properties are remedied with the same level of priority (*e.g.*, speed, resources used to remedy, *etc.*) as any other equivalent loss of function for individuals who are not Blind or Visually Disabled.

**15.** **Accessibility Support.**

15.1.   Within eighteen (18) months of the Effective Date of this Agreement, The Hundreds shall provide support through Accessibility Support Personnel during regular business hours to assist Blind or Visually Disabled individuals with resolving Accessibility issues regarding the Digital Properties. The Hundreds shall also train the Accessibility Coordination Team to review, handle, or escalate Accessibility related questions, comments, and complaints generated by the toll-free telephone number or email address in the Accessibility Statement.

15.2.   Any complaint or issue that concerns or relates to compliance with the terms of this Agreement that is made to the Accessibility Support Personnel shall be forwarded to Class Counsel and the Accessibility Coordination Team, who then shall coordinate internally to ensure that any noncompliance reported by a Blind or Visually Disabled individual is resolved as soon as possible, but no later than one hundred and twenty (120) days after such noncompliance is reported to the Accessibility Coordination Team.

15.3.   To the extent any such complaint or issue is not resolved, it shall be subject to the Dispute Resolution Procedure.

16.   **Semi-Annual Automated Accessibility Audit.**

16.1.   During the Agreement Term, The Hundreds, or a consultant retained on its behalf, shall perform Semi-Annual Automated Accessibility Audits to evaluate whether the Digital Properties are Accessible.

16.2.   The Hundreds Settlement Contact shall forward the results of the Semi-Annual Automated Accessibility Audit to Class Counsel as part of the next Annual Report that The Hundreds must provide Class Counsel pursuant to this Agreement.

17.   **Annual End-User Accessibility Testing.**

17.1.   During the Agreement Term, the Accessibility Consultant shall perform Annual End-User Accessibility Testing, with such testing to be performed by individuals who are Blind or Visually Disabled or who have training and experience in the manner in which Blind or Visually Disabled individuals use screen readers to navigate, browse, and conduct business online, to evaluate whether the Digital Properties are Accessible.

17.2.   The Hundreds Settlement Contact shall forward the results of the Annual End-User Accessibility Testing to Class Counsel as part of the next Annual Report that The Hundreds must provide Class Counsel pursuant to this Agreement.

18.   **Agreement Term.** The Agreement Term shall last three (3) years from the Effective Date.

18.1.   If The Hundreds is unable to provide the Letter of Accessibility by the Agreement Term, then the term of the Agreement shall extend to the First Extended Agreement Term.

18.2.   If the term of the Agreement is extended pursuant to Section 18.1, and The Hundreds is unable to provide the Letter of Accessibility by the First Extended Agreement Term, then the term of the Agreement shall extend to the Second Extended Agreement Term.

19.   **Monitoring of Compliance.** Class Counsel and Murphy shall monitor The Hundreds' compliance with Sections 5 through 17 of this Agreement as described in this Section.

19.1.   Class Counsel and Murphy shall be entitled to visit the Digital Properties at any time without notice for the purpose of evaluating The Hundreds' compliance with Sections 5 through 17 of this Agreement.

19.2.   The Hundreds shall include, in the Annual Report, copies of any Accessibility related questions, comments, and complaints generated by the toll-free telephone number or email address published in the Accessibility Statement on the Website, or generated or received in any other manner or through any other medium.

20.   **The Hundreds' Reporting Schedule.** The Hundreds shall provide the following information to Class Counsel during the Agreement Term.

| Information | Deadline | *See* Agreement at Section |
|---|---|---|
| The Annual Report | On the Effective Date's anniversary date during the Agreement Term | 23.1 |
| The Letter of Accessibility | To be included as an exhibit to the Annual Report | 8.4 |
| Third-Party Content The Hundreds cannot confirm is Accessible | To be included in the Annual Report | 6.3 |
| Confirmation The Hundreds has designated the Accessibility Coordination Team | Within three (3) months of the Effective Date | 7.1 |
| Confirmation The Hundreds has appointed or retained the Accessibility Consultant | Within six (6) months of the Effective Date | 8.1 |
| The Accessibility Consultant's Status Report | To be included as an exhibit to the Annual Report | 8.4 |
| Changes to the Accessibility Consultant | Within three (3) months of any change | 8.5 |
| Results of the Initial Accessibility Audit | To be included as an exhibit to the Annual Report | 9.3 |
| The Accessibility Strategy | Within eighteen (18) months of the Effective Date | 10.3 |

| Information | Deadline | *See* Agreement at Section |
|---|---|---|
| The Accessibility Statement | Within nine (9) months of the Effective Date | 11.3 |
| Status of the Accessibility Statement | To be included in the Annual Report | 11.8 |
| Accessibility training materials | To be included in the Annual Report | 12.5 |
| Accessibility related Questions, Comments, and Complaints | To be included in the Annual Report | 19.2 |
| Results of the Semi-Annual Automated Accessibility Audit | To be included in the Annual Report | 16.2 |
| Results of the Annual End-User Accessibility Testing | To be included in the Annual Report | 17.2 |
| Accessibility related questions, comments, and complaints received by The Hundreds | To be included in the Annual Report | 19.2 |

21. **Scope of Agreement.**

21.1. The provisions of this Agreement shall apply to The Hundreds' policies, practices, and procedures with respect to Blind or Visually Disabled individuals within the United States who use screen reader auxiliary aids to access the Digital Properties. The data The Hundreds periodically reports to Class Counsel pursuant to this Agreement shall contain relevant information for these individuals.

21.2. The provisions of this Agreement shall not apply to Subsequently Abandoned Websites and Mobile Apps.

21.3. Murphy expressly agrees that the resolution described herein is fair and adequate, and that the policies and procedures set forth in this Agreement are intended to remedy any and all alleged violations of the ADA and related state and local laws by The Hundreds with respect to the claims alleged by Murphy in this Litigation.

22. **Incentive Award to Named Plaintiff.**

22.1.   Subject to Court approval, The Hundreds shall pay Murphy an incentive award in the amount of One Thousand Dollars and Zero Cents ($1,000.00).

22.2.   Murphy waives any right to an incentive award in connection with this matter which exceeds the amount provided in Section 22.1.

22.3.   The Hundreds shall pay the amount provided in Section 22.1 within fourteen (14) days of the Effective Date by sending a business check or wire transfer payable to "EAST END TRIAL GROUP LLC IOLTA ATTORNEY TRUST ACCOUNT" to Class Counsel in care of Kevin W. Tucker, East End Trial Group LLC, at an address or account to be confirmed by Class Counsel before payment.

22.4.   The incentive award shall not be subject to withholding deductions and The Hundreds may issue an IRS Form 1099 to Murphy, through Class Counsel at the address provided in Section 39.1.

23. **Annual Report and Meet-and-Confers.**

23.1.   During the Agreement Term, on the Effective Date's anniversary date, The Hundreds shall submit a report to Class Counsel, stating the status of the implementation of this Agreement and identifying any outstanding issues on which the Parties are then in disagreement.

23.2.   At either Party's written request, Class Counsel and The Hundreds or its counsel will meet to discuss the Annual Report and review the implementation of this Agreement. Such meetings may be conducted in person or remotely, as the Parties agree.

24. **Dispute Resolution Procedure.** The Parties shall address disputes relating to any of the provisions of this Agreement as follows.

24.1.   Informal Dispute Resolution.

24.1.1.   If either Party believe a dispute exists relating to any section of this Agreement, it shall notify the other Party in writing, describing the dispute. The other Party shall respond in writing to such notice within fifteen (15) business days of receipt of the notice.

24.1.2.   If a Settlement Class Member believes a dispute exists relating to any section of this Agreement, he or she may notify Class Counsel who, in turn, shall notify The Hundreds in writing, describing the

dispute. The Hundreds shall respond in writing to such notice within fifteen (15) business days of receipt of the notice.

24.1.3.   Further, if The Hundreds is informed of a dispute relating to any section of this Agreement by a Settlement Class Member, The Hundreds shall notify Class Counsel in writing, describing the dispute and providing the Settlement Class Member's contact information, if known. The Hundreds shall respond in writing to the dispute within fifteen (15) business days of receipt of the dispute. The response shall be directed to Class Counsel.

24.1.4.   Within fifteen (15) business days of receipt of the response described in Sections 24.1.1, 24.1.2, or 24.1.3, counsel for the Parties shall meet-and-confer by telephone or in person and attempt to resolve the issue informally. The Parties may agree to enter mediation on the issue in dispute.

24.1.5.   The Hundreds shall be responsible for all reasonable attorneys' fees and Costs incurred by Class Counsel and Murphy in pursuing informal dispute resolution of a nonfrivolous claim pursuant to Section 24.1.

24.2.   Submission to Mediation.

24.2.1.   In the event that the Parties are unable to resolve their dispute through such meet-and-confer negotiations, then within forty-five (45) days of receipt of the notice of the dispute, the dispute shall be submitted to mediation before a mutually agreed-upon mediator in Pittsburgh, Pennsylvania or such other location as the Parties may mutually agree. The mediation may be conducted electronically. The Hundreds shall be responsible for all reasonable attorneys' fees and Costs incurred by Class Counsel and Murphy in pursuing mediation of a nonfrivolous claim pursuant to Section 24.2. If The Hundreds declines to pay such fees and Costs, Murphy may submit the dispute to the Court.

24.3.   Submission to the Court.

24.3.1.   If the meet-and-confer process and mediation pursuant to Sections 24.1 and 24.2 of this Agreement do not result in a resolution of the dispute within a reasonable time, any Party may make a motion for resolution of the dispute by any United States District Court Judge

or Magistrate Judge who may be assigned to the case.

24.3.2.  In the event that any Party finds it necessary to seek resolution of a dispute by the Court, the Court shall award reasonable attorneys' fees and Costs incurred in pursuing dispute resolution as set forth in Section 24.2 in accordance with the prevailing party standards under the ADA.

## 25. Attorneys' Fees and Costs Through the Agreement Term.

25.1.  Subject to Court approval, The Hundreds shall pay Murphy's reasonable attorneys' fees and Costs incurred in connection with this matter in the amount of Forty-Seven Thousand Five Hundred Dollars and Zero Cents ($47,500.00). East End Trial Group LLC shall provide The Hundreds with a current W-9 and any further documentation or information necessary to allow it to meet its payment obligations herein.

25.2.  Murphy waives any right to reasonable attorneys' fees and Costs incurred in connection with this matter through the end of the Agreement Term that exceed the amount provided in Section 25.1, other than the right to any reasonable attorneys' fees and Costs awarded pursuant to the Dispute Resolution Procedure.

25.3.  The Hundreds shall pay the amount provided in Section 25.1 within forty-five (45) days following Final Approval by sending a business check or wire transfer payable to "EAST END TRIAL GROUP LLC IOLTA ATTORNEY TRUST ACCOUNT" to Class Counsel in care of Kevin W. Tucker, East End Trial Group LLC, at an address or account to be confirmed by Class Counsel before payment.

## 26. Attorneys' Fees and Costs After the Agreement Term.

26.1.  First Extended Agreement Term.

26.1.1.  If there is a First Extended Agreement Term, The Hundreds shall pay additional reasonable attorneys' fees and Costs incurred by Murphy during the First Extended Agreement Term for work performed by Class Counsel pursuant to this Agreement in the amount of Fifteen Thousand Dollars and Zero Cents ($15,000.00).

26.1.2.  Other than the right to any reasonable attorneys' fees and Costs awarded pursuant to the Dispute Resolution Procedure, Murphy waives any right to attorneys' fees and Costs for work performed by Class Counsel during the First Extended Agreement Term that exceeds the amount provided in Section 26.1.1.

26.1.3.     The Hundreds shall pay the amount provided in Section 26.1.1 no later than forty-five (45) days after the start of the First Extended Agreement Term or the date The Hundreds receives all necessary IRS forms from Class Counsel, whichever is later, by sending a business check or wire transfer payable to "EAST END TRIAL GROUP LLC IOLTA ATTORNEY TRUST ACCOUNT" to Class Counsel in care of Kevin W. Tucker, East End Trial Group LLC, at an address or account to be confirmed by Class Counsel before payment.

26.2.   Second Extended Agreement Term.

26.2.1.     If there is a Second Extended Agreement Term, The Hundreds shall pay additional reasonable attorneys' fees and Costs incurred by Murphy during the Second Extended Agreement Term for work performed by Class Counsel pursuant to this Agreement in the amount of Fifteen Thousand Dollars and Zero Cents ($15,000.00).

26.2.2.     Other than the right to any reasonable attorneys' fees and Costs awarded pursuant to the Dispute Resolution Procedure, Murphy waives any right to attorneys' fees and Costs for work performed by Class Counsel during the Second Extended Agreement Term that exceeds the amount provided in Section 26.2.1.

26.2.3.     The Hundreds shall pay the amount provided in Section 26.2.1 no later than forty-five (45) days after the start of the Second Extended Agreement Term or the date The Hundreds receives all necessary IRS forms from Class Counsel, whichever is later, by sending a business check or wire transfer payable to "EAST END TRIAL GROUP LLC IOLTA ATTORNEY TRUST ACCOUNT" to Class Counsel in care of Kevin W. Tucker, East End Trial Group LLC, at an address or account to be confirmed by Class Counsel before payment.

## 27.   Preliminary Approval, Objections, and Fairness Hearing.

27.1.   Promptly after execution of this Agreement, Murphy shall request that the Court schedule a preliminary approval hearing within fourteen (14) days of the request, or as soon thereafter as the Court may set the hearing, and that the Court preliminarily approve this Agreement, and approve the proposed form of notice and plan for providing notice submitted by the Parties.

27.2.  Murphy shall ask the Court to schedule a final fairness hearing no less than ninety (90) days after the Notice Deadline set by the Court, or as soon thereafter as the Court may set the hearing.

27.3.  Murphy shall ask the Court to order Murphy to file a motion for final approval and a motion for reasonable attorneys' fees and Costs within forty-five (45) days after the Notice Deadline set by the Court.

27.4.  Murphy shall ask the Court to order the following procedures for objections: Settlement Class Members may object to the proposed Agreement by filing, within sixty (60) days after the Notice Deadline set by the Court, written objections with the Clerk of the Court. Only such objecting Settlement Class Members shall have the right, and only if they expressly seek it in their objections, to present objections orally at the fairness hearing. Responses by Murphy to any timely-filed objections shall be made no less than five (5) days before the fairness hearing.

**28.    Notice.**

28.1.  As soon as practicable, but no later than twenty-one (21) days after the Court's entry of a Preliminary Approval order, The Hundreds shall, at its expense:

28.1.1.    Cause the Long-Form Notice accompanying this Agreement as Agreement Exhibit 1 to be published on, and make the following documents filed in the Lawsuit available on, the Settlement Website: the class action complaint, motion for preliminary approval of class action settlement and supporting documents, and the Court's order granting preliminary approval and memorandum. The Settlement Website and the documents identified in this Section shall be fully accessible by individuals who screen reader auxiliary aids.

28.1.2.    Add an invisible link at the beginning of the Website and Mobile App that directs visitors using screen readers to the Settlement Website. The link shall include alternative text which reads "Click to view our ADA class action settlement notice regarding the accessibility of our website and mobile app."

28.1.3.    Post a link to the Settlement Website on The Hundreds' social media accounts, including https://www.facebook.com/thehundreds, https://www.instagram.com/thehundreds, and https://twitter.com/thehundreds. The post shall be in the form of

Section 28.3 and shall tag and direct questions about the stipulated class action settlement notice to Class Counsel at their accounts on each respective platform.

28.2. As soon as practicable, but no later than twenty-one (21) days after the Court's entry of a Preliminary Approval order, Class Counsel shall, at its expense, request that at least the following organizations publish notice in the form of Section 28.4 in their respective electronic newsletters and social media accounts such that the notice is sent out within sixty (60) days of Preliminary Approval: Achieva, American Council of the Blind, American Foundation for the Blind, Blinded American Veterans Foundation, Blinded Veterans Association, Foundation Fighting Blindness, Guide Dogs for the Blind, National Association of Blind Merchants, National Council on Disability, and National Federation of the Blind.

28.3. "Visit https://www.thehundredsADAsettlement.com to learn more about The Hundreds' agreement to make its digital content accessible to screen reader users. Have questions? Contact East End Trial Group at [https://www.facebook.com/EastEndTrialGroup/ or https://www.instagram.com/ eastendtrialgroup/ or https://twitter.com/eastendtrial]."

28.4. "A proposed settlement has been reached that would resolve the class action lawsuit filed in the United States District Court for the Western District of Pennsylvania at *Anthony Hammond Murphy v. The Hundreds is Huge, Inc.,* Civil Action No. 1:21-cv-204. The lawsuit alleges that The Hundreds is Huge, Inc. violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, by failing to take the necessary steps to ensure its website and mobile app does not discriminate against blind or visually disabled consumers who use screen reader auxiliary aids to access digital content. Under the settlement, The Hundreds is Huge, Inc. agrees to make its website, mobile app, and any new website or mobile app it develops or acquires accessible to screen reader users. For a more complete summary of the terms of the proposed settlement, please visit https://www.thehundredsADAsettlement.com or contact Class Counsel at https://eastendtrialgroup.com/."

28.5. No less than five (5) days before the fairness hearing, The Hundreds shall file a declaration from the stipulated class action settlement administrator that summarizes the work the administrator performed and the number of visitors to the Settlement Website.

## 29. Judgment, Final Approval, and Dismissal.

29.1. Class Counsel and Murphy shall request that the Court enter a final judgment and

order granting Final Approval of this Agreement and enjoining Settlement Class Members from asserting any Released Injunctive Claims. Among other things, the final judgment and order granting Final Approval of this Agreement shall attach this Agreement as an exhibit and shall provide that the Court retains jurisdiction through the Agreement Term in order to enforce this Agreement.

29.2. This Parties shall move to dismiss the Lawsuit with prejudice pursuant to Rule 41 of the Federal Rules of Civil Procedure no later than forty-five (45) days following the date of Final Approval and The Hundreds' payment of fees pursuant to Section 25, whichever occurs later. Pursuant to *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994), the Parties' joint motion shall request that the Court's dismissal order expressly retain the Court's jurisdiction to enforce this Agreement against all Parties.

30. **No Admission of Liability.** By agreeing to and voluntarily entering into this Agreement, there is no admission or concession by The Hundreds, direct or indirect, express or implied, that the Website and/or Mobile App is in any way inaccessible, or that The Hundreds has violated the ADA or any other federal, state, or local law, code, regulation, order, or rule. Nothing in this Agreement shall operate as an admission by The Hundreds in any context other than within the settlement of this Lawsuit that any particular standard or standards apply to the Website and/or Mobile App under the ADA or any other federal or state law.

31. **Terms Not Confidential; Non-Disparagement.**

31.1. The terms of this Agreement are not confidential and will be publicly filed into the Court record of this Lawsuit.

31.2. The Parties and their respective counsel, agents, and representatives agree not to make any disparaging remarks about the other Party and their respective counsel relating to this Agreement or the negotiations leading to it.

32. **Release.** Effective on the date of Final Approval, the Injunctive Releasing Parties unconditionally and forever fully and finally release, acquit, and discharges The Hundreds from the Released Injunctive Claims. Pursuant to this release, Murphy and Settlement Class Members shall not bring any Released Injunctive Claims concerning the Accessibility of the Digital Properties during the Agreement Term. Notwithstanding this release, Murphy and Settlement Class Members may fully utilize the Dispute Resolution Procedure during the Agreement Term.

33. **Entire Agreement.** This Agreement contains all the agreements, conditions, promises, and covenants among The Hundreds, Murphy, Class Counsel, and the Settlement Class

regarding matters set forth in this Agreement, and supersedes all prior or contemporaneous agreements, drafts, representations, or understandings, whether written or oral, with respect to the subject matter of this Agreement.

34. **Amendment.** Prior to Final Approval, this Agreement can only be amended by written agreement of the Parties hereto. Following Final Approval, no amendment of this Agreement shall be effective unless such amendment is pursuant to Court order.

35. **Severability.** If any provision or any part of this Agreement shall at any time be held unlawful, or inconsistent with applicable law, in whole or in part, under any federal, state, county, municipal, or other law, ruling, or regulation, then the remaining provisions of this Agreement shall remain effective and enforceable.

36. **Drafting of this Agreement.** This Agreement is deemed to have been drafted by all Parties hereto, as a result of arm's length negotiations among the Parties. Whereas all Parties have contributed to the preparation of this Agreement, this Agreement shall not be construed more strictly against one Party than another.

37. **Execution in Counterparts.** The Parties may execute this Agreement in counterparts, each of which shall constitute an original for all purposes, including any copies of the same, and all duplicate counterparts will be construed together and constitute one agreement. The Parties will be bound by signatures on this document that are transmitted by hand delivery, mail, facsimile, electronic mail, or any other electronic means to the other Party or, if applicable, counsel for the other Party. Such signatures will have the same binding effect as any original signatures. A typed electronic signature will have the same effect as a handwritten signature.

38. **Continuing Jurisdiction.** The Parties agree that the Court shall have continuing jurisdiction throughout the Agreement Term and, if applicable, the First Extended Agreement Term and Second Extended Agreement Term, to interpret and enforce this Agreement.

39. **Deadlines.** The Parties and the Court recognize that from time-to-time unforeseen events, such as exigent business circumstances, labor disputes, natural disasters, personnel issues, pandemics, and negotiations with third parties, cause delays in the accomplishment of objectives, no matter how well-intentioned and diligent the Parties may be. Accordingly, with regard to the provisions of this Agreement that require that certain acts be taken within specified periods, the Parties understand and agree that Court approval shall not be required for reasonable extensions of deadlines. In the event that any Party determines that an action required by this Agreement cannot be taken within the specified time period, that Party shall promptly notify the other Party that it anticipates a delay, state the reasons for the delay, and offer a proposed alternative deadline. The Parties shall

endeavor to cooperate in reasonably rescheduling such deadlines. However, if the other Party does not agree to the proposed delay, the Parties shall submit the matter to the Dispute Resolution Procedure.

40.     **Communications to Murphy, Class Counsel, the Settlement Class, and The Hundreds.** All letters, notices, IRS Form 1099s, requests, demands, and other communications required or permitted to be given to the Parties pursuant to this Agreement shall be in writing, provided by electronic mail, facsimile, and/or next-day express delivery service, and addressed as follows.

40.1.   To Murphy, Class Counsel, or the Settlement Class:

Kevin W. Tucker (He/Him)
Kevin Abramowicz (He/Him)
EAST END TRIAL GROUP LLC
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com
Tel. (412) 877-5220

Lawrence H. Fisher
LAWFIRST
One Oxford Centre
301 Grant Street, Suite 270
Pittsburgh, PA 15219
lawfirst@lawrencefisher.com
Tel. (412) 577-4040

40.2.   To The Hundreds is Huge, Inc.:

Brian H. Simmons
BUCHANAN INGERSOLL & ROONEY PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
brian.simmons@bipc.com
Tel. 412-562-8800

The Hundreds may change the individual(s) to whom notices and communications required or permitted by this Agreement shall be sent by providing Class Counsel

29

with written notification that it wishes to do so.